AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the

Western District of Texas

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| Rickey Eugene Turner | ) | Case No. |
| | ) | |
| | ) | |
| | ) | **EP:25-M-00550-MAT** |
| | ) | |
| *Defendant(s)* | | |

**FILED**

February 11, 2025

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _Fidel Morales_
DEPUTY

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _02/08/2025_ in the county of _El Paso_ in the _Western_ District of _Texas_, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 21 U.S.C. §952 | knowlingly and intentionally import into the United States from the Republic of Mexico a quantity of methamphetamine, to wit; approximately 202 grams (gross weight) of methamphetamine, a Schedule II Controlled Substance; |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

Complaint sworn to telephonically on
_February 11, 2025_ at _02:00 PM_ and signed
electronically. **FED.R.CRIM.P. 4.1(b)(2)(A)**

_Complainant's signature_

Marilen Sommers, HSI Task Force Officer
_Printed name and title_

Sworn to before me and signed in my presence.

Date: _02/11/2025_

_Judge's signature_

City and state: _El Paso, Texas_

Miguel A. Torres, U.S. Magistrate Judge
_Printed name and title_

Affidavit

On February 8, 2025, at approximately 11:40 p.m., Rickey Eugene TURNER entered the United States from the Republic of Mexico through the Paso Del Norte (PDN) Port of Entry (POE), in El Paso, Texas, which is within the Western District of Texas. TURNER crossed into the US through the pedestrian lanes of the POE.

TURNER presented himself to the pedestrian primary Customs and Border Protection Officer (CBPO) with his US Passport card. The primary CBPO received a negative customs declaration from TURNER. While conducting routine system queries, the CBPO received a system alert for TURNER. The CBPO escorted TURNER into the Passport Control Secondary (PCS) area for further inspection.

Inside PCS, CBPO's discovered Vaseline in TURNER's belongings. A Canine Enforcment Officer (CEO) was asked to assist with the inspection. The CEO and their assigned Concealed Human Narcotics Detector Dog (CHNDD) conducted a sniff of TURNER. The CEO notified officers that the canine alerted to the trained odor of narcotics emitting from TURNER.

A partial pat down inspection was approved by a Supervisory CBPO due to the canine alert and prior officer experience with internal body carriers having a lubricant, like Vaseline, in their possession. The partial pat down inspection was conducted by two male CBPOs. The partial pat down inspection was concluded with negative results.

CBPOs conducted a border search of TURNER's cell phone. CBPOs found text messages stating, "headed to bridge now be there in five mins" and "I got it back in".

TURNER did not consent to being transported to a hospital for medical examination. A body cavity search warrant was applied for and granted.

TURNER was transported to the Las Palmas Medical Center where an X-ray was conducted showing a foreign body inside TURNER's rectal cavity. When confronted by the doctor, TURNER asked the CBPO's if he could talk to them. TURNER then stated he did have something inside of his rectal cavity but did not know what it was and was forced to cross the contents across the border. TURNER extracted a black taped bundle wrapped in a condom from his rectal cavity. TURNER was transported back to the PDN POE.

A field test of the bundle yielded positive results for the properties of methamphetamine with a total gross weight of 202g.

A Homeland Security Investigations (HSI) Task Force Officer (TFO) read TURNER his Miranda Warnings in the English language in the presence of an HSI Special Agent. TURNER agreed to speak to agents without the presence of an attorney. TURNER stated he was told he had to take the bundle that is probably crystal methamphetamine across the border, or "they" would kill him and his mother. TURNER

stated he has been inside a house in Mexico for the last few days smoking methamphetamine and watching TV. TURNER explained that after he was given the bundle, he inserted it into his rectum. He further explained he then had to defecate and took it back out. TURNER stated after taking out the bundle he could not get it back inside of him all the way. TURNER explained he then went to a gas station and then a Chinese restaurant where he met another man. TURNER stated the man bought them a hotel room. Once at the hotel room, he took the bundle out of his rectum without the man noticing and then had sexual intercourse with the man. After, he was able to fit the bundle completely inside of his rectum. TURNER then stated once the bundle was completely inside his rectum, he then attempted to cross the POE. Agents informed TURNER his story was not consistent with someone who had been forced to cross narcotics seeing as he was free to leave the house he was staying at and perform those activities as well as not seeking help when he entered the United States.

Because this Affidavit is being submitted for the limited purpose of establishing probable cause as set forth herein, I have not included each and every fact known to me concerning this investigation.